UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re RICHARD T. STROTHER,<br><br>Debtor | Docket Number 14-16771-PGH<br><br>Chapter 13 |
| HYLAS YACHTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD T. STROTHER and<br>T3 VISTAS, LLC,<br><br>Defendants | Docket Number 14-1318 |

## MOTION OF THE PLAINTIFF, HYLAS YACHTS, INC., TO ABSTAIN AND REMAND

NOW COMES the Plaintiff, Hylas Yachts, Inc. ("Hylas"), and requests that this Court:

1.      abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c);

2.      remand this adversary proceeding to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §§ 1447(c) and 1452(b); and

3.      order that Strother pay Hylas its "just costs and any actual expenses, including attorney fees, incurred as a result of the removal" pursuant to 28 U.S.C. § 1447(c).

This bankruptcy was brought by Strother in bad faith to avoid a trial on the merits of this case and to avoid a finding of contempt. Moreover, this is now Strother's fourth attempt to get this matter "steered" out of the Massachusetts venue and to a Florida court. It is also the second

1

time on virtually the eve of trial Strother has filed bankruptcy to avoid judgment[1]. In support of this motion, Hylas states as follows and submits the affidavit of Kyle Jachney.

## Facts

The following facts, unless otherwise indicated, are supported by the affidavit of Kyle Jachney filed herewith.

### I.    The Debtor, Richard T. Strother.

Richard Strother ("Strother") is an individual and the sole member and manager of T3 Vistas, LLC ("T3"), a Nevada limited liability company. Strother is a former practicing attorney who was licensed to practice law in the state of Connecticut but who is under suspension since 1999. Strother was convicted in 1996 of bank fraud. On March 24, 2014, Strother filed a voluntary petition for relief under Chapter 13.

### II.    Factual history of this Action.

This action arises out of a contract for the sale of a seventy-foot, custom-built yacht for T3. In or around the summer of 2008, Strother was interested in purchasing a custom-built yacht from Hylas. The vessel that Strother wanted to purchase was a seventy-foot yacht known as Hylas 70 Hull Number 7 ("the Yacht").

When Strother was considering entering into a contract with Hylas to build the Yacht, Strother created a Nevada limited liability company called T3. On August 1, 2008, Hylas and T3 entered into an agreement to purchase the Yacht for $1,630,000 ("the P&S"). Strother signed the P&S on behalf of T3. After all of the extra equipment (including a stripper pole) was ordered, the total purchase price for the Yacht was $1,885,000.

Hylas commenced the construction of the Yacht in August 2008. The target date for delivery was Autumn 2009. Production went smoothly, and in late October 2009, Hylas

---

[1] The first was the bankruptcy filing of his solely-owned entity, T3 Vistas, LLC.

delivered the Yacht from its factory in Taiwan to Fort Lauderdale, Florida, in accordance with the P&S. The P&S also required the balance to be paid upon delivery to Fort Lauderdale prior to the commissioning[2].

The Yacht arrived in Fort Lauderdale in late October 2009. Strother was obligated to pay the balance of purchase price on November 5, 2009, one week after it was delivered to Fort Lauderdale. Then, Strother told Hylas that T3 was not going to tender the balance of the purchase price as the P&S required. Strother did not want Hylas to resell the Yacht and continued through June 2011 to attempt to obtain financing for the Yacht. When it was apparent that Strother was not going to close on the Yacht, Hylas hired a broker to find another buyer.

In December 2011, Hylas entered into an agreement with a third party to purchase the Yacht. Just prior to the scheduled closing with the buyer—and long after T3 breached the P&S—Strother learned that the Yacht was under agreement for sale. Even though T3 was in breach of the P&S, on February 17, 2012, the Defendants filed a UCC financing statement ("UCC-1") with the Massachusetts Secretary of State, UCC Filing Number 201293903030. This financing statement alleged that T3 had a security interest in the Yacht. On March 7, 2012 Strother amended the UCC-1 by filing a UCC-3 with the Massachusetts Secretary of State, UCC Filing Number 201294284750. The new Financing Statement identified *Strother individually* as the Secured Party. Strother also sent a letter titled "Notice of Lien" to Hylas and the buyer in which he threatened to arrest the Yacht.

---

[2] Commissioning is the process whereby the Yacht, when delivered, is then equipped with the boom, mast, and rigging that holds the mast in place. In addition, the hull is painted and the electronic equipment is installed. Commissioning in the context of building a yacht of this sort is a relatively minor phase of the overall construction.

III.    **Procedural history of this Action.**

      The dispute between the parties has been actively litigated for over two years. On March 13, 2012, as a direct result of the filing of the UCC financing statements, Hylas brought suit against Strother and T3 in the United States District Court for the District of Massachusetts, Docket Number 1:12-cv-10468-DJC ("the Action"). Exhibit 1, District Court Docket. At that time, Hylas moved for injunctive relief seeking an order that Strother remove the liens from the Yacht, which the Court granted. Id.; Exhibit 9, Statement of Reasons. The Court originally ordered Hylas to post a bond, but as discovery continued and Strother's liability became clearer, the Court dissolved the bond. Id.

      On March 21, 2012, Strother and T3 filed a motion to dismiss the case for lack of personal jurisdiction. Id. On March 30, 2012, the court denied that motion. Id. On May 30, 2012, the Defendants moved to transfer the case to the Southern District of Florida. Id. The court denied that motion on June 15, 2012. Id.

      After the parties completed their discovery, Hylas moved for summary judgment on all of the Defendants' counterclaims and many of Hylas's claims. Id. On February 26, 2014, the Court granted Hylas summary judgment on all of the Defendants' counterclaims and granted summary judgment for Hylas against Strother on its claim for filing a false UCC financing statement. Id. The Court set a trial date of March 3, 2014. Id.

      Hylas was concerned that Strother would use the extra time to hide his assets, and prevailed upon the court to enter an injunction barring Strother from dissipating of his assets without order of the Court. Id. On March 6, 2012, after a lengthy day-long hearing, the Court granted that motion. Strother appeared pro se and participated in that hearing by telephone. Id. The Court ordered Strother to itemize in detail his assets under oath and segregate $1.3 million of his assets. Exhibit 2, Injunction. Strother was also required to notify all of the entities holding

4

assets on his behalf of the preliminary injunction and certify to the Court that he had done so. Because of T3's bankruptcy filing, Strother's attorney withdrew at that time as well. The Court rescheduled the trial for April 14, 2014.

Strother never complied with the preliminary injunction. Consequently, on March 19, 2014, Hylas filed a motion for contempt. Exhibit 1. On March 26, 2014, to avoid being found in contempt and to avoid trial three weeks later, Strother filed for bankruptcy. Strother then filed a notice removing this case to the District Court for the Southern District of Florida. Under Local R.S.D.Fla. 87.2, it was then referred to this Court.

**IV.    Procedural history of Strother's action in the United States District Court for the Southern District of Florida.**

On March 13, 2012, T3 filed claims against Hylas raising claims arising out of the same operative facts as Strother in the United States District Court of the Southern District of Florida, T3 Vistas, LLC v. Hylas Yachts, Inc., Docket Number 9:12-cv-80283-DTKH. The case was dismissed on two occasions, the first time on  On September 21, 2012, Hylas filed a motion to dismiss that action under the first to file rule, because Hylas filed its action in Massachusetts first. The court dismissed that action on October 1, 2012. Exhibit 3, South District of Florida Docket.

**V.    The T3 Bankruptcy.**

On January 20, 2014, before the Court was set to rule on the outstanding summary judgment motion in this case and on the eve of the first trial date set for March 3, 2014, T3 filed a voluntary petition for bankruptcy under Chapter 7, In re T3 Vistas, LLC, 14-11262-PGH. The intention and effect of T3's filing was to avoid a trial on the merits. However, Hylas moved for relief from stay, and on February 28, 2014, the Court granted that motion. Exhibit 4, In re T3 Vistas, LLC, Docket. According to the evidence adduced in discovery in this case and T3's

bankruptcy schedules, T3 did not operate or conduct business and Strother left it generally unfunded and merely used it to pay for personal expenses. While it was intended to take title to the Yacht, it never did so.

## **Argument**

**This Court has already permitted T3 relief from stay upon Hylas's motion. Strother is simply attempting to accomplish here what he could not accomplish there.** Strother's motivation for filing bankruptcy is simply to further delay the trial of this action, drive up Hylas's costs, avoid a finding of contempt, and try for a fourth time to obtain a more favorable forum. The Court should not permit Strother's latest attempt to hijack this case on the eve of trial.

I.    **The applicable standards.**

A.    **Abstention and remand.**

The standards for abstention and remand are given in 28 U.S.C. § 1334(c) and 28 U.S.C. § 1452(b), respectively. "Permissive abstention" permits the Court, in its discretion, to abstain from hearing a case:

> nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(2).

When an action has been removed pursuant to 28 U.S.C. § 1452(a), the Court may also remand the action pursuant to 28 U.S.C. § 1452(b), which states: "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." The "equitable ground" basis provided in the statute is very broad. The term "equitable" in § 1452(b) has been defined as "fair" or "appropriate." See Things Remembered,

6

Inc. v. Petrarcha, 116 S.Ct. 494, 499 (1995) (Ginsberg, J., concurring) ("'equitable' signals that which is reasonable, fair, or appropriate.").

In discussing whether to permissively abstain and remand pursuant to § 1452(b), courts have determined a variety of the same considerations govern each analysis. See Borne v. New Orleans Health Care, Inc., 116 B.R. 487, 494 (E.D.La. 1990). Many cases have addressed the factors or determinants used in the permissive abstention/equitable remand inquiry, but the most often recognized and exhaustive list of considerations is contained in In re Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service, Inc.), 81 B.R. 422,429 (Bankr. S.D.Tex. 1987). Those factors are generally enumerated as:

1. the effect or lack thereof on the efficient administration of the estate;

2. the extent to which state law issues predominate over bankruptcy issues;

3. the difficulty or unsettled nature of applicable state law;

4. the presence of a related proceeding commenced in state court or other nonbankruptcy court;

5. the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7. the substance rather than form of an asserted "core" proceeding;

8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9. the burden on the court's docket;

10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11. the existence of a right to a trial by jury; and

12. the presence in the proceeding of nondebtor parties.

See also Browning v. Navarro, 743 F.2d 1069, 1076 n. 21 (5th Cir. 1984). However, any arrangement of factors is merely a guide to be used by courts in the permissive abstention/equitable remand inquiry. Landry v. Exxon Pipeline Co., 260 B.R 769, 802 (Bankr. M.D.La. 2001). As stated by the Landry court, any listing of factors does not denote the need for a formulaic balance of the equities as equitable remand requires only the presence of "any equitable ground." Id. The presence of "any equitable ground" is therefore sufficient justification to remand a proceeding. Similarly, courts have routinely held the presence of several, but not all, of the requirements for mandatory abstention pulls strongly in favor of remand or permissive abstention. See Republic Reader's, 81 B.R. at 428.

### B. Core proceedings "arising in" or "arising under" Title 11.

In this circuit,

> jurisdiction over matters allegedly related to a bankruptcy case is best analyzed in two steps: first, the reviewing court must decide whether federal jurisdiction exists in the district court; second, if jurisdiction does exist, it must determine whether the bankruptcy court properly exercised its constitutionally available powers in proceeding over the matter as a "core" or "non-core" proceeding.

Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 787 (11th Cir. 1990) (citing Wood, 825 F.2d at 91). The federal courts have jurisdiction over this adversary proceeding because it was originally brought under the district court's diversity jurisdiction. The only question therefore is whether this matter is core or non-core.

The Supreme Court has stated that "the restructuring of debtor-creditor relations [ ] is at the core of the federal bankruptcy power, [and] must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages." Northern Pipeline v. Marathon Pipe Line Co., 458 U.S. 50, 71 (1982) (emphasis in original). "Non-core" proceedings are those "controversies that do not depend on the bankruptcy laws for their existence--suits that

8

could proceed in another court even in the absence of bankruptcy." <u>Wood</u>, 825 F.2d at 96
(emphasis added). Claims that are "non-core" are "related to" title 11. <u>Continental Nat'l Bank of
Miami v. Sanchez (In re Toledo)</u>, 170 F.3d 1340 (11th Cir. 1999). The contraposition is that if a
matter is core, it is necessarily not "related to" Title 11 and must either "arise in" or "arise under"
Title 11.

 A case is "related to" a proceeding under title 11 if it is related to the bankruptcy in any
way. "The usual articulation of the test for determining whether a civil proceeding is related to
bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the
estate being administered in bankruptcy." <u>See</u> <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3rd Cir.
1984); <u>see also</u> <u>Wood v. Wood (In re Wood)</u>, 825 F.2d 90, 93 (5th Cir. 1987). In other words, if
the outcome of a proceeding could alter the debtor's rights, liabilities, options, or freedom of
action, or which in any way impacts upon the handling and administration of the bankruptcy
estate, such a matter is "related to" a bankruptcy case. <u>Pacor</u>, 743 F.2d at 994.

 Matters "arising under" title 11 are those matters involving a cause of action created or
determined by a statutory provision of title 11. <u>See</u> <u>Wood</u>, 825 F.2d at 96-97. In other words, a
proceeding must invoke a substantive right created by the bankruptcy code for such proceeding
to "arise under" title 11. Similarly, matters "arising in" a bankruptcy case are "those
'administrative' matters that arise only in bankruptcy cases. In other words, 'arising in'
proceedings are those that are not based on any right expressly created by title 11, but
nevertheless, would have no existence outside of the bankruptcy." <u>Wood</u>, 825 F.2d at 97.

** C. Attorneys' fees and costs arising out of bad faith removal of an action.**
 This Court has stated:

> Section § 1447(c) provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The standard for awarding fees under this section was set forth by the United States Supreme Court in <u>Martin v. Franklin Capital Corporation</u>, 546 U.S. 132, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). The Martin Court held that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." <u>Id.</u> at 141, 126 S.Ct. 704.

<u>In re Jet Network, LLC</u>, 457 B.R. 895, 902 (Bankr.S.D.Fla. 2011). The question is whether the removal "was filed in bad faith or to intentionally delay the progress of the" case. <u>Id.</u>

**II.**     **The Court lacks jurisdiction to conduct a trial of this case.**

This Court lacks the constitutional authority to try this case. <u>See</u> <u>Stern v. Marshall</u>, 564 U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); <u>Rothstein, Rosenfeldt, & Adler, P.A., v. T.D. Bank, N.A.</u>, 2012 WL 827124, *3 (S.D.Fla. Mar. 9, 2012). This matter is non-core, as discussed more particularly below. Hylas has not filed a proof of claim in this bankruptcy, although it reserves its right to do so following a 2004 deposition and the Section 341 hearing. Moreover, Hylas does not consent to the entry of final judgment by this Court, as it indicated in its Rule 9027 statement. This Court therefore lacks jurisdiction to hear this case.

**III.**    **The Court should abstain and remand this action because it pertains to state law claims and Strother removed this action in bad faith on the eve of trial.**

The Court should abstain from hearing this case and remand it to the District of Massachusetts. That court is more acquainted with the case, and the case is queued up for trial. Strother is attempting to use the bankruptcy court to stymie Hylas's attempt to litigate its case. The Court should not permit this bad faith gamesmanship.

> **A.**     **This is a non-core action arising solely under Massachusetts state law with no federal causes of action.**

This action is indisputably non-core. There are no counterclaims (the district court having found for Hylas on them all) and Hylas has not filed a proof of claim. The case is merely "related

10

to" the estate because there are no substantive or administrative rights under Title 11 implicated by the action. Furthermore, Hylas does not allege *any* cause of action arising under federal law; it alleges solely state law claims, and the sole basis of the federal court's jurisdiction is diversity. Exhibit 5, First Amended Complaint.

> **B.      The United States District Court of Massachusetts is best positioned to adjudicate this case an enter judgment.**

As the docket demonstrates, for over two years, the Massachusetts District Court has been involved with this case from its filing, through discovery, and now at the time of trial. Exhibit 1. Strother has availed himself of Massachusetts state law by filing UCC statements *in Massachusetts*; participating fully in the litigation of this case; flying to Massachusetts for a court-ordered mediation; conducting his own discovery in this case; appearing, through counsel, and *pro se*, at every hearing; and requesting and receiving a bond on Hylas's first preliminary injunction. Exhibit 1. The district court entered a substantive injunction that Strother has simply ignored; the district court is in the best position to enforce it. Moreover, the parties have fully prepared for trial before the district court: they have compiled their exhibits, designated their trial testimony, and entered into a stipulation regarding the same. Exhibit 1; Exhibit 6, Stipulation. The only live witness, Kyle Jachney, is a Massachusetts resident, and special counsel for T3 is located in Boston. Exhibit 6; Exhibit 4. Only this bankruptcy stopped the scheduled April 15 trial. Nevertheless, the district court remains in the best position to conduct the trial of this case. See Rothstein, Rosenfeldt, & Adler, 2012 WL at *4-*5 ("Withdrawal of the reference at this stage would result in this Court losing the benefit of the bankruptcy court's experience in both the law and facts, and leading to an inefficient allocation of judicial resources."). The district court has full knowledge of the facts and is best prepared to enter an order swiftly. Exhibit 7, Order.

**C.      Strother filed his bankruptcy in bad faith to stop the trial of this Action and acquire a more favorable jurisdiction.**

Strother's bad faith is illustrated by his behavior throughout this case, particularly as illustrated in the affidavit of Kyle Jachney. He has attempted to economically extort Hylas, threatened to have its Florida attorney sanctioned, and accused it of criminal conduct.

Strother has shown himself to be skilled at using the judicial system to his own ends[3]. He is using this bankruptcy to shop for a more favorable forum because his motion in the district court to transfer was denied. Exhibit 1. He caused T3 to declare bankruptcy in January 2014 to delay trial. Exhibit 4. Then, when Hylas got a preliminary injunction in March 2014 and Strother ignored it, he sidestepped sanctions by filing this bankruptcy. Exhibit 1. His behavior is egregious and should not be tolerated.

**D.      The law at issue in this case, specifically M.G.L. c. 93A, § 11, is extremely technical and the district court is best able to adjudicate it.**

The application of Massachusetts' Chapter 93A is complicated and the case law interpreting it is sprawling. Attached as Exhibit 8 are copies of M.G.L. c. 93A, §§ 2 and 11. There must be a finding of a violation of sections 2 and 11. The district court has worked with this statute on numerous occasions and is best in the position to adjudicate it in this case.

**E.      The majority of the factors in Republic Reader's Service are met.**

The twelve factors here are largely met. First, the administration of the bankruptcy estate will be best served by allowing the district court with the greatest familiarity with the case to reduce it to a final judgment as it is prepared to do. Second, as described above, the claims only arise under state law. Third, the application of Massachusetts' Chapter 93A is complicated, as discussed above. Fourth, in this instance, there are no associated cases in any other state courts. Fifth, the basis for jurisdiction was solely diversity. Sixth and seventh, while Hylas is the

---

[3] Hylas anticipates objecting to any proposed plan and

12

Debtor's largest creditor, this action is a non-core action unrelated to the administrative or substantive provisions of Title 11. Eighth, the case cannot be severed; there are no core bankruptcy matters that can be severed from the case because all of the claims arise under Massachusetts law. Ninth, Hylas does not know the impact on the court's docket, but Strother has brought two additional adversary proceedings in this case. Further, there is nothing left to be done but the trial, but Strother will likely attempt to reopen and conduct additional discovery. Tenth, as described above, Strother is attempting to forum shop after two courts denied his attempts to conducts this case to Florida. Eleventh, the parties agreed to waive a jury trial on the eve of trial because the district court had such complete knowledge of the case; the district court's knowledge of the case will be that much more essential to an efficient determination of the issues. Lastly, there are two nondebtor parties, T3 and Hylas. Hylas is located in Massachusetts and local counsel in Boston, Massachusetts, represents T3.

**IV.    The Court should award Hylas its costs and attorneys' fees arising out of this removal because it was in bad faith and intended to intentionally delay the progress of this action.**

As described above, Strother filed this bankruptcy in bad faith to stop Hylas from trying the case and to avoid the imposition of sanctions. Without a doubt, Strother intends to "delay the progress" of the case--particularly the imposition of sanctions. In re Jet Network, LLC, 457 B.R. at 902. The Court should award Hylas its costs and fees arising out of this bad faith removal.

## Conclusion

For the foregoing reasons, Hylas requests the stated relief.

Respectfully submitted,

HYLAS YACHTS, INC.,

By its attorney,

/s/ Geoffrey D. Ittleman
Geoffrey D. Ittleman, Esq.
The Law Office of Geoffrey D. Ittleman, PA
110 SE 6th Street, Suite 2300
Ft. Lauderdale, FL 33301
Tel (954) 462-8340
Fax (954) 462-8342
geoffrey@ittlemanlaw.com
Florida Bar No. 377790

### <u>Certificate of Service</u>

On this day, April 15, 2014, I certify that I served a true and accurate copy of this

document on the following persons by ECF or E-mail:

Richard T. Strother                    Robin R Weiner
340 Royal Poinciana Way #317-203       Chapter 13 Trustee
Palm Beach, FL 33480                   PO Box 559007
ricstro33@gmail.com                    Fort Lauderdale, FL 33355

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

/s/ Geoffrey D. Ittleman
Geoffrey D. Ittleman